IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ALEX RYLE, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) C.A. No. 20-910 (MN) |
| | ) |
| ROBERT MAY, Warden, and | ) |
| ATTORNEY GENERAL OF THE STATE | ) |
| OF DELAWARE, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION**

Alex Ryle – *Pro se* Petitioner.

Elizabeth R. McFarlan, Deputy Attorney General, Delaware Department of Justice, Wilmington, DE – Attorney for Respondents.

September 13, 2023
Wilmington, Delaware

**NOREIKA, U.S. DISTRICT JUDGE**

Pending before the Court is a Petition for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 ("Petition") filed by Petitioner Alex Ryle ("Petitioner"). (D.I. 1; D.I. 3). The State filed an Answer in opposition, to which Petitioner filed a Reply. (D.I. 13; D.I. 17). For the reasons discussed, the Court will deny the Petition.

### I.   BACKGROUND

> On April 12, 2014, police arrested [Petitioner] for evading probation authorities. When the police searched [Petitioner] incident to his arrest, they found a handgun loaded with nine rounds of ammunition. At the time of his arrest, [Petitioner] was a person prohibited from possessing a gun because of prior convictions.

*Ryle v. State*, 149 A.3d 505 (Table), 2016 WL 5929952, at *1 (Del. Oct. 11, 2016). Petitioner was questioned at the police station and confessed to possessing the gun in a post-*Miranda* recorded interview. *Id*.

In July 2014, a New Castle County grand jury returned an indictment charging Petitioner with three counts of possession of a firearm by a person prohibited ("PFBPP"), possession of ammunition by a person prohibited ("PABPP"), carrying a concealed deadly weapon ("CCDW"), and illegal possession of a controlled substance. (D.I. 12-1 at Entry No. 2; D.I. 12-10 at 64-67). In December 2014, a New Castle County grand jury returned a superseding indictment that modified the language in the charges but did not add or remove any charged offenses. (D.I. 12-1 at Entry No. 22; D.I. 12-10 at 186-189). Before trial on February 10, 2015, the State dismissed two counts of PFBPP and the single count of illegal possession of a controlled substance. (D.I. 13 at 2). Petitioner represented himself at trial. On February 11, 2015, a Superior Court jury found Petitioner guilty of one count each of PFBPP, PABPP, and CCDW. The Superior Court revoked Petitioner's bail, ordered a presentence investigation, and committed Petitioner to the custody of the Department of Correction pending sentencing. On February 19, 2015, Petitioner moved for a

new trial, which the Superior court denied on August 14, 2015. *See State v. Ryle*, 2015 WL 5004903 (Del. Super. Ct. Aug. 15, 2015).

On October 5, 2015, the Superior Court sentenced Petitioner as a habitual offender to twenty-three years of imprisonment for his PFBPP and CCDW convictions. For his PABPP conviction, the Superior Court sentenced Petitioner to eight years of incarceration, suspended for decreasing levels of supervision. (D.I. 12-5 at 17-22). Petitioner appealed, and the Delaware Supreme Court affirmed Petitioner's convictions and sentences on October 11, 2016. *See Ryle*, 2016 WL 5929952 at *4.

On August 16, 2017, Petitioner filed a *pro se* motion for postconviction relief pursuant to Delaware Superior Court Criminal Rule 61 ("Rule 61 motion") and a motion for the appointment of counsel. (D.I. 12-10 at 22-26). The Superior Court granted the motion to appoint counsel and, on May 23, 2018, appointed postconviction counsel filed a motion to withdraw on the ground that there were no meritorious postconviction claims. (D.I. 12-1 at Entry No. 94; D.I. 12-11 at 227-228; D.I. 12-15 at 83-106). Petitioner supplemented his claims. (D.I. 12-16 at 66-75). On June 27, 2019, a Superior Court Commissioner issued a Report and Recommendation that Petitioner's Rule 61 motion be denied. (D.I. 12-15 at 51-73); *see State v. Ryle,* 2019 WL 2714817 at *4 (Del. Super. Ct. June 27, 2019). On October 21, 2019, the Superior Court adopted the Commissioner's Report and Recommendation, granted postconviction counsel's motion to withdraw, and denied Petitioner's Rule 61 motion. *See Ryle,* 2019 WL 5306847, at *4 (Del. Super. Ct. Oct. 21, 2019). The Delaware Supreme Court affirmed that decision on May 5, 2020. *See Ryle v. State*, 228 A.3d 1064 (Table), 2020 WL 2188923 (Del. May 5, 2020).

## II.     GOVERNING LEGAL PRINCIPLES

### A.     The Antiterrorism and Effective Death Penalty Act of 1996

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") "to reduce delays in the execution of state and federal criminal sentences . . . and to further the principles of comity, finality, and federalism." *Woodford v. Garceau*, 538 U.S. 202, 206 (2003). Pursuant to AEDPA, a federal court may consider a habeas petition filed by a state prisoner only "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). AEDPA imposes procedural requirements and standards for analyzing the merits of a habeas petition in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002).

### B.     Exhaustion and Procedural Default

Absent exceptional circumstances, a federal court cannot grant habeas relief unless the petitioner has exhausted all means of available relief under state law. *See* 28 U.S.C. § 2254(b); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842-44 (1999); *Picard v. Connor*, 404 U.S. 270, 275 (1971). AEDPA states, in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that –
>
> (A) the applicant has exhausted the remedies available in the courts of the State; or
>
> (B)(i)  there is an absence of available State corrective process; or
>   (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1).

The exhaustion requirement is based on principles of comity, requiring a petitioner to give "state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at 844-45; *Werts v. Vaughn*, 228 F.3d 178, 192 (3d Cir. 2000). A petitioner satisfies the exhaustion requirement by demonstrating that the habeas claims were "fairly presented" to the state's highest court, either on direct appeal or in a post-conviction proceeding, in a procedural manner permitting the court to consider the claims on their merits. *See Bell v. Cone*, 543 U.S. 447, 451 n.3 (2005); *Castille v. Peoples,* 489 U.S. 346, 351 (1989).

A petitioner's failure to exhaust state remedies will be excused, and the claims treated as "technically exhausted", if state procedural rules preclude him from seeking further relief in state courts. *See Coleman v. Thompson*, 501 U.S. 722, 732, 750-51 (1991) (such claims "meet[] the technical requirements for exhaustion" because state remedies are no longer available); *see also Woodford v. Ngo*, 548 U.S. 81, 92-93 (2006). Although treated as technically exhausted, such claims are procedurally defaulted for federal habeas purposes. *See Coleman*, 501 U.S. at 749 (1991); *Lines v. Larkins*, 208 F.3d 153, 160 (3d Cir. 2000). Federal courts may not consider the merits of procedurally defaulted claims unless the petitioner demonstrates either cause for the procedural default and actual prejudice resulting therefrom, or that a fundamental miscarriage of justice will result if the court does not review the claims. *See McCandless v. Vaughn,* 172 F.3d 255, 260 (3d Cir. 1999); *Coleman,* 501 U.S. at 750-51. To demonstrate cause for a procedural default, a petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). To demonstrate actual prejudice, a petitioner must show that the errors during his trial created more than a possibility of prejudice; he must show that the errors worked to his actual and

substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Id.* at 494.

Alternatively, if a petitioner demonstrates that a "constitutional violation has probably resulted in the conviction of one who is actually innocent," *Murray*, 477 U.S. at 496, then a federal court can excuse the procedural default and review the claim in order to prevent a fundamental miscarriage of justice. *See Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Wenger v. Frank*, 266 F.3d 218, 224 (3d Cir. 2001). The miscarriage of justice exception applies only in extraordinary cases, and actual innocence means factual innocence, not legal insufficiency. *See Bousley v. United States*, 523 U.S. 614, 623 (1998); *Murray*, 477 U.S. at 496. A petitioner establishes actual innocence by asserting "new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial," showing that no reasonable juror would have voted to find the petitioner guilty beyond a reasonable doubt. *Hubbard v. Pinchak*, 378 F.3d 333, 339-40 (3d Cir. 2004); *see also Reeves v. Fayette SCI*, 897 F.3d 154, 157 (3d Cir. 2018).

C.  **Standard of Review**

When a state's highest court has adjudicated a federal habeas claim on the merits,[1] the federal court must review the claim under the deferential standard contained in 28 U.S.C. § 2254(d). Pursuant to 28 U.S.C. § 2254(d), federal habeas relief may only be granted if the state court's decision was "contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States," or the state court's decision was an unreasonable determination of the facts based on the evidence adduced in the state court

---

[1]  A claim has been "adjudicated on the merits" for the purposes of 28 U.S.C. § 2254(d) if the state court decision finally resolves the claim on the basis of its substance, rather than on a procedural or some other ground. *See Thomas v. Horn*, 570 F.3d 105, 115 (3d Cir. 2009).

proceeding. 28 U.S.C. § 2254(d)(1) & (2); *see Williams v. Taylor,* 529 U.S. 362, 412 (2000); *Appel v. Horn*, 250 F.3d 203, 210 (3d Cir. 2001). The deferential standard of § 2254(d) applies even when a state court's order is unaccompanied by an opinion explaining the reasons relief has been denied. *See Harrington v. Richter*, 562 U.S. 86, 98-101 (2011). As explained by the Supreme Court, "it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Id.* at 99.

A state court decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 413. The mere failure to cite Supreme Court precedent does not require a finding that the decision is contrary to clearly established federal law. *See Early v. Packer*, 537 U.S. 3, 8 (2002). For instance, a decision may comport with clearly established federal law even if the decision does not demonstrate an awareness of relevant Supreme Court cases, "so long as neither the reasoning nor the result of the state-court decision contradicts them." *Id*. In turn, an "unreasonable application" of clearly established federal law occurs when a state court "identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of a prisoner's case." *Williams*, 529 U.S. at 413; *see also White v. Woodall*, 572 U.S. 415, 426 (2014).

When performing an inquiry under § 2254(d), a federal court must presume that the state court's determinations of factual issues are correct. *See* 28 U.S.C. § 2254(e)(1); *Appel*, 250 F.3d at 210. This presumption of correctness applies to both explicit and implicit findings of fact and is only rebutted by clear and convincing evidence to the contrary. *See* 28 U.S.C. § 2254(e)(1); *Campbell v. Vaughn*, 209 F.3d 280, 286 (3d Cir. 2000); *Miller-El v. Cockrell*, 537 U.S. 322, 341

(2003) (stating that the clear and convincing standard in § 2254(e)(1) applies to factual issues, whereas the unreasonable application standard of § 2254(d)(2) applies to factual decisions). State court factual determinations are not unreasonable "merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010).

Conversely, if the state's highest court did not adjudicate the merits of a properly presented claim, the claim is reviewed *de novo* instead of under § 2254(d)'s deferential standard. *See Breakiron v. Horn,* 642 F.3d 126, 131 (3d Cir. 2011); *Lewis v. Horn*, 581 F.3d 92, 100 (3d Cir. 2009). *De novo* review means that the Court "must exercise its independent judgment when deciding both questions of constitutional law and mixed constitutional questions." *Williams*, 529 U.S. at 400 (Justice O'Connor concurring). "Regardless of whether a state court reaches the merits of a claim, a federal habeas court must afford a state court's factual findings a presumption of correctness and . . . the presumption applies to factual determinations of state trial and appellate courts." *Lewis*, 581 F.3d at 100 (cleaned up).

### III.   DISCUSSION

Petitioner's timely filed Petition asserts the following thee claims for relief: (1) appellate counsel provided ineffective assistance by failing to raise a claim that the trial court should have excluded evidence to remedy the State's discovery violation; (2) the 2014 amendment to Delaware Superior Court Criminal Rule 61(i)(4) is unconstitutional because it deprived Petitioner of the right to invoke the interest of justice exception to raise a claim of ineffective assistance of counsel; and (3) Petitioner's separate convictions and sentences for PFBPP, PABPP, and CCDW violate the Double Jeopardy Clause because PFBPP and PABPP are lesser-included offenses of CCDW. (D.I. 3 at 1-5; D.I. 10-1 at 3-7).

### A. Claim One: Ineffective Assistance of Appellate Counsel

In Claim One, Petitioner appears to argue that appellate counsel should have investigated and discovered that Petitioner's pre-trial appointed counsel had filed discovery requests to which the State never responded. According to Petitioner, if appellate counsel had discovered the unanswered discovery requests, appellate counsel would have been able to argue on direct appeal that the Superior Court should have excluded the weapon found on Petitioner's person and Petitioner's police statement due to the State's failure to provide the requested discovery. Petitioner presented Claim One in his Rule 61 motion and on post-conviction appeal, and both the Superior Court and the Delaware Supreme Court rejected the argument as meritless. Therefore, Claim One will only warrant relief if the Delaware Supreme Court's decision was either contrary to, or an unreasonable application of, clearly established federal law.

The clearly established Supreme Court precedent governing ineffective assistance of both trial and appellate counsel claims is the two-pronged standard enunciated by *Strickland v. Washington*, 466 U.S. 668 (1984) and its progeny. *See Wiggins v. Smith*, 539 U.S. 510 (2003); *Lewis v. Johnson*, 359 F.3d 646, 656 (3d Cir. 2004). Under the first *Strickland* prong, a petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness," with reasonableness being judged under professional norms prevailing at the time counsel rendered assistance. *Strickland*, 466 U.S. at 688. Under the second *Strickland* prong, a petitioner must demonstrate "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is a "probability sufficient to undermine confidence in the outcome." *Id.* A petitioner must make concrete allegations of actual prejudice and substantiate them or risk summary dismissal. *See Wells v. Petsock*, 941 F.2d 253, 259-60 (3d Cir. 1991); *Dooley v. Petsock*, 816 F.2d 885, 891-92 (3d Cir. 1987). A court can choose to address the prejudice prong before the deficient

9

performance prong and reject an ineffective assistance of counsel claim solely on the ground that the defendant was not prejudiced. *See Strickland,* 466 U.S. at 698. Although not insurmountable, the *Strickland* standard is highly demanding and leads to a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. Finally, an attorney's decision about which issues to raise on appeal are strategic,[2] and an attorney is not required to raise every possible non-frivolous issue on appeal. *See Jones v. Barnes*, 463 U.S. 745 (1983); *Smith v. Robbins*, 528 U.S. 259, 272 (2000).

With respect to the first prong of the § 2254(d)(1) inquiry, a "state court decision is contrary to clearly established federal law if it applies a rule that contradicts the governing law set forth in Supreme Court precedent, or if it confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from that reached by the Supreme Court." *Eley v. Erickson*, 712 F.3d 837, 846 (3d Cir. 2013). In this case, the Delaware Supreme Court's decision was not contrary to clearly established federal law because it correctly identified the *Strickland* standard applicable to Claim One. *See Fahy v. Horn,* 516 F.3d 169, 196 (3d Cir.2008) (Pennsylvania Supreme Court's decision was not "contrary to" clearly established federal law because it appropriately relied on its own state court cases, which articulated the proper standard derived from Supreme Court precedent); *Williams*, 529 U.S. at 406 ("[A] run-of-the-mill state-court decision applying the correct legal rule from [Supreme Court] cases to the facts of a prisoner's case [does] not fit comfortably within § 2254(d)(1)'s 'contrary to' clause").

---

[2] *See Albrecht v. Horn*, 485 F.3d 103, 138 (3d Cir. 2007); *Buehl v. Vaughn*, 166 F.3d 163, 174 (3d Cir. 1999) (counsel is afforded reasonable selectivity in deciding which claims to raise without the specter of being labeled ineffective).

10

The Court must also determine if the Delaware Supreme Court reasonably applied the *Strickland* standard to the facts of Petitioner's case. When performing the second prong of the § 2254(d)(1) inquiry, the Court must review the Delaware state court's decision with respect to Petitioner's ineffective assistance of counsel claim through a "doubly deferential" lens.[3] *See Richter*, 562 U.S. at 105. Notably, when § 2254(d)(1) applies, "the question is not whether counsel's actions were reasonable, [but rather], whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id*. When assessing prejudice under *Strickland*, the question is "whether it is reasonably likely the result would have been different" but for counsel's performance, and the "likelihood of a different result must be substantial, not just conceivable." *Id*. And finally, when viewing a state court's determination that a *Strickland* claim lacks merit through the lens of § 2254(d), federal habeas relief is precluded "so long as fairminded jurists could disagree on the correctness of the state court's decision." *Id*. at 101.

On the first day of his trial, Petitioner asked the trial court to exclude his videorecorded police statement and the firearm that had been taken from his person at the time of his arrest

> because he had not previously received or examined them. Because [Petitioner] had never requested accommodations to view the items that an incarcerated *pro se* litigant must, the Court made arrangements to allow [Petitioner] to review the recording and firearm evidence at the conclusion of that day's proceedings. [Petitioner] then requested that a forensic chemist's report be

---

[3]  As explained by the *Richter* Court,

> [t]he standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is doubly so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d).

*Richter*, 562 U.S. at 105 (internal citations omitted).

> excluded because he received it only the week before trial. That report was excluded and the State dropped a controlled substance charge. The parties also stipulated that [Petitioner] was a person prohibited, so that no evidence of his prior convictions would be presented at trial.

*Ryle*, 2015 WL 5004903, at *1. Petitioner was convicted and counsel was appointed to represent him on direct appeal. (D.I. 12-11 at 51) While appellate counsel was preparing for direct appeal, Petitioner sent appellate counsel a letter presenting the issues he wished appellate counsel to raise on appeal; one issue was a challenge to the trial court's adverse discovery rulings. (D.I. 12-15 at 43-45) Appellate counsel did not raise the discovery issue on direct appeal; instead, appellate counsel raised the following two claims: (1) the Superior Court Commissioner did not have jurisdiction to permit Petitioner to waive counsel and represent himself during his trial; and (2) the Commissioner failed to adequately explain the risks of self-representation and failed to make a finding that Petitioner's waiver of representation was knowing and intelligent. *See Ryle*, 2020 WL 2188923, at *1.

In his Rule 61 affidavit, appellate counsel explained that he examined and considered Petitioner's claims relating to the trial court's adverse discovery rulings, but did not have a good faith basis to appeal those rulings. (D.I. 12-15 at 66; D.I. 12-16 at 64) After referencing appellate counsel's Rule 61 affidavit and a letter appellate counsel sent to Petitioner explaining why he was not raising the discovery issue,[4] the Superior Court Commissioner concluded that appellate

---

[4] As set forth in the Commissioner's R&R, appellate counsel's February 8, 2016 letter to Petitioner stated:

> I reviewed the transcript to see if the Court committed error in any of its evidence decisions I did not detect any significant error that would support a reversal of your conviction based upon the erroneous admission of evidence. Judge Wallace ruled in your favor on a number of issues, including on the issue relating to the medical examiner's report. Based on that ruling the State was forced to

counsel's "actions were objectively reasonable under the circumstances. He brought claims on appeal with merit (that were worthy of oral argument) and did not bring those without merit." (D.I. 12-15 at 67) The Commissioner also found that Petitioner failed to demonstrate prejudice because no discovery would have changed the fact that Petitioner was lawfully arrested and searched, and that he possessed a prohibited weapon concealed on his person. (*Id.*)

The Superior Court accepted, in whole, the Commissioner's Report and Recommendation. *See Ryle*, 2019 WL 5306847, at *4. In addition, the Superior Court noted that the trial court "thoroughly addressed [Petitioner's] 'discovery' complaints [i]n his new trial motion [… and] found no discovery violation occurred." *Id.* at *3. The Superior Court held that the non-existence of any discovery was sufficient, on its own, to defeat Petitioner's IAAC claim. *Id.*

The Delaware Supreme Court affirmed the Superior Court's decision on post-conviction appeal, explaining why Petitioner failed to satisfy both prongs of the *Strickland* test:

> First, he has not demonstrated prejudice because the Superior Court found that no discovery violation occurred, and [Petitioner] has not established otherwise. Moreover, even if he had established a discovery violation, this Court reviews for abuse of discretion the sanction imposed by a trial court for a discovery violation, and will reverse the trial court's decision only if it was clearly erroneous. For these reasons, [Petitioner] has not shown that the outcome of the appeal likely would have been different if appellate counsel had raised the discovery sanction issue on appeal. For similar reasons, this issue was not "clearly stronger" than the arguments that appellate counsel presented on appeal, which earned oral

---

> dismiss the possession of drug charge. Significantly, he ruled in your favor on which convictions could be presented to the jury. He prevented all of your felony convictions from being admitted at trial and only allowing the misdemeanor conviction to be considered by the jury. Moreover, I don't believe that the Court committed error by denying your motion to suppress, or any of your other motions.

(D.I. 12-15 at 66)

>> argument. [Petitioner] therefore also has not satisfied the first prong of *Strickland*.

*Ryle*, 2020 WL 2188923, at *2.

Considering the trial court's determination that no discovery violation occurred during Petitioner's trial, the Delaware Supreme Court reasonably rejected Claim One on the basis that appellate counsel did not perform deficiently by failing to raise a meritless issue and also because the absence of a discovery violation meant that Petitioner was not prejudiced. Moreover, the Delaware Supreme Court reasonably determined that Petitioner failed to satisfy the prejudice prong of *Strickland* even if a discovery violation had occurred. Under Delaware law, a trial court has broad discretion to determine an appropriate remedy to cure any discovery violation by the State. *See Cabrera v. State*, 840 A.2d 1256, 1263 (Del. 2004). Because, as the trial court noted when denying Petitioner's motion for new trial, the "exclusion of evidence is certainly not the only cure"[5] for a discovery violation, Petitioner cannot demonstrate a reasonable probability that the outcome of his proceeding would have been different but for appellate counsel's failure include the requested discovery issue on appeal.

Accordingly, the Court will deny Claim One for failing to satisfy § 2254(d).

### B. Claim Two: Unconstitutionality of Rule 61(i)(4)

In Claim Two, Petitioner contends that the 2014 amendment to Delaware Superior Court Criminal Rule 61(i)(4) is unconstitutional because it deprived him of the right to invoke the interest of justice exception to raise a claim of ineffective assistance of appellate counsel. (D.I. at 7; D.I. 3 at 3-5) Petitioner presented Claim Two to the Delaware Supreme Court on postconviction appeal. The Delaware Supreme Court denied the argument, explaining:

> [Petitioner's] argument that the procedural bars that are set forth in Superior Court Criminal Rule 61 are unconstitutional does not

---

[5]    *Ryle*, 2015 WL 5004903, at *3-4.

> provide a basis for relief. The Superior Court did not hold that [Petitioner's] claims were procedurally barred—rather, it considered them on the merits. The procedural bars therefore had no bearing on the outcome of [Petitioner's] motion postconviction for relief, and no further consideration of this argument is necessary.

*Ryle,* 2020 WL 2188923, at *1.

The Delaware state courts did not apply Rule 61(i)(4) to any of Petitioner's postconviction claims. In fact, as just discussed, the Delaware state courts adjudicated Petitioner's ineffective assistance of appellate counsel claim on the merits. *See supra* at Section III.A. Therefore, the Court will deny Claim Two as factually baseless and for failing to satisfy Article III"s case or controversy requirement because Petitioner has not suffered an injury in fact. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561 (1992) (explaining that to obtain relief, a party must show that he has an "injury in fact" that will likely "be redressed by a favorable decision" from the court (cleaned up)).

### C. Claim Three: Double Jeopardy

In his final Claim, Petitioner contends that his separate convictions and sentences for PFBPP, PABPP, and CCDW violate the Double Jeopardy Clause because PFBPP and PABPP are lesser included offenses of CCDW. Petitioner presented the instant double jeopardy argument to the Delaware Supreme Court on appeal from the denial of his motion for correction of an illegal sentence, thereby exhausting Claim Three. *See Ryle*, 2022 WL 288084, at *1. The Delaware Supreme Court denied the argument as meritless. *See id*. at *1-4. Therefore, Claim Three will only warrant relief if the Delaware Supreme Court's decision was contrary to, or an unreasonable application of, clearly established federal law.

The Double Jeopardy Clause protects an individual from "being subjected to the hazards of trial and possible conviction more than once for an alleged offense," *Green v. United States*,

355 U.S. 184, 187 (1957), and prevents the imposition of multiple punishments for the same offense. *See North Carolina v. Pearce,* 395 U.S. 711, 717 (1969), *overruled in part on other grounds by Alabama v. Smith,* 490 U.S. 794 (1989). The traditional test for double jeopardy claims involving the charging of multiple offenses under separate statutes is the same-elements test set forth in *Blockburger v. United States*, 284 U.S. 299 (1932).  Pursuant to *Blockburger*, a court must analyze "whether each offense contains an element not contained in the other; if not, they are the 'same offense' and double jeopardy bars additional punishment and successive prosecution." *United States v. Dixon*, 509 U.S. 688, 696 (1993).  The rule articulated in *Blockburger* is a "rule of statutory construction to help determine legislative intent;" the rule is "not controlling when the legislative intent is clear from the face of the statute or the legislative history." *Garrett v. United States*, 471 U.S. 773, 778-79 (1 985). Consequently, "even if the crimes are the same under *Blockburger*, if it is evident that a state legislature intended to authorize cumulative punishments, a court's inquiry is at an end." *Ohio v. Johnson*, 467 U.S. 493, 499 n.8 (1984).  As the Supreme Court held in *Missouri v. Hunter*, 459 U.S. 359, 368-69 (1983):

> [S]imply because two criminal statutes may be construed to proscribe the same conduct under the *Blockburger* test does not mean that the Double Jeopardy Clause precludes the imposition, in a single trial, of cumulative punishments pursuant to those statutes....
>
> Where... a legislature specifically authorizes cumulative punishment under two statutes, regardless of whether those two statutes proscribe the "same" conduct under *Blockburger*, a court's task of statutory construction is at an end, and the prosecutor may seek and the trial court or jury may impose cumulative punishment under such statutes in a single trial.

*Missouri v. Hunter*, 459 U.S. 359, 368-69 (1983).

In this case, the Delaware Supreme Court identified *Blockburger* and *Pearce* as the federal constitutional precedent applicable to Claim Three. Therefore, that court's decision was not contrary to clearly established federal law. *See Fahy,* 516 F.3d at 196; *Williams*, 529 U.S. at 406.

Nor was it based on an unreasonable application of clearly established federal law. The Superior Court compared the elements of the three crimes – PFBPP, PABPP, and CCDW – and concluded that "there is not greater/lesser-offense relationship" between them. *Ryle*, 2021 WL 2272851, at *4. Applying Supreme Court double jeopardy jurisprudence, the Delaware Supreme Court agreed, explicitly finding that "PFBPP, PABPP, and CCDW contain different elements." *Ryle*, 2022 WL 288084, at *2. The Delaware Supreme Court explained:

> The elements of PFBPP and PABPP are the "purchasing, owning, possessing or controlling [of] a deadly weapon or ammunition for a firearm" by a person prohibited. [11 Del. C. § 1448(a), (b)]. The elements of CCDW are carrying a concealed deadly weapon without a license to do so. [11 Del. C. § 1442]. Emphasizing that Section 1448 requires proof of a felony conviction while Section 1442 requires proof of concealment, this Court held that Section 1448 and 1442 offenses were not the same for double jeopardy purposes in *Upshur v. State*, 420 A.2d 165, 168 (Del. 1980)]. *Upshur* involved a defendant who was convicted and sentenced for Section 1448 and 1442 violations that arose from his concealment of a butcher knife in the waistband of his pants.

*Id.* The Delaware Supreme Court reviewed the legislative intent, the risk to the public interest, and the level of culpability related to the offenses at issue. *See id*. at *2-3. The court concluded:

> PFBPP and PABPP do not involve less serious risk of injury or less culpability than CCDW. In *Ball [v. United States,* 470 U.S. 856 (1985)]*,* the United States Supreme Court held that a felon could not be convicted and sentenced for both receipt and possession of the same firearm because proof of illegal receipt of the firearm necessarily included proof of illegal possession of the firearm. Unlike *Ball*, the proof needed for CCDW (concealment of a deadly weapon without a license) does not necessarily include the proof needed for PFBPP and PABPP (possession of a firearm or firearm ammunition by a person prohibited).

17

*Id*. at *3.  In turn, as the Delaware Supreme Court held in *Brown v. State*, sentencing a defendant to PFBPP and PABPP arising from the unlawful possession of a single, loaded handgun does not violate the Double Jeopardy Clause or the multiplicity doctrine because "each of the charges requires proof of a fact which the other does not – for PFBPP, knowing possession of a firearm; for PABPP, knowing possession of ammunition." *Brown v. State*, 2021 WL 2588923, at *1 (Del. June 24, 2021).

"Legislatures, not courts, prescribe the scope of punishments."  *Hunter*, 459 U.S. at 368. "Where, as here, a legislature specifically authorizes cumulative punishment under two statutes, regardless of whether those two statutes proscribe the 'same' conduct under *Blockburger*, a court's task of statutory construction is at an end and the prosecutor may seek and the trial court or jury may impose cumulative punishment under such statutes in a single trial."  *Id*. at 368-69. Consequently, the Delaware Supreme Court did not unreasonably apply clearly established federal law nor unreasonably determine the facts when it held  that Petitioner's convictions and sentences for PFBPP, PABPP, and CCDW did not violate the  Double Jeopardy Clause.  Accordingly, the Court will deny Claim Three.

### IV.     CERTIFICATE OF APPEALABILITY

A district court issuing a final order denying a § 2254 petition must also decide whether to issue a certificate of appealability.  *See* 3d Cir. L.A.R. 22.2 (2011); 28 U.S.C. § 2253(c)(2).  A certificate of appealability is appropriate when a petitioner makes a "substantial showing of the denial of a constitutional right" by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  28 U.S.C. § 2253(c)(2); *see also Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  In addition, when a district court denies a habeas petition on procedural grounds without reaching the underlying constitutional claims, the court is not required to issue a certificate of appealability unless the petitioner demonstrates that

jurists of reason would find it debatable: (1) whether the petition states a valid claim of the denial of a constitutional right; and (2) whether the court was correct in its procedural ruling. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The Court has concluded that the instant Petition does not warrant relief. Reasonable jurists would not find this conclusion to be debatable. Accordingly, the Court will not issue a certificate of appealability in this case.

## V. CONCLUSION

For the reasons discussed, the Court will deny the instant Petition without issuing a certificate of appealability. The Court will enter an Order consistent with this Memorandum Opinion.